We'll turn to the first case on the argument calendar, Case 24-5419, United States v. Smith. Good morning. Good morning. Good morning, Your Honors, and may it please the Court. Justine Bonner on behalf of Appellant LaTanya Smith. I would like to reserve two minutes of my time for rebuttal. And I'll watch the clock. The question before the Court this morning is a narrow one. Did Ms. Smith receive ineffective assistance of counsel when her trial counsel failed to seek suppression of the evidence derived from her unlawfully seized iPhone? The answer to this question is yes. Under the Supreme Court's decision in Riley v. California, cell phones merit heightened privacy protections. After Riley, no reasonable attorney would have failed to challenge the seizure of a cell phone under the facts of this case. A search warrant... Let me ask you this. The record seems to indicate that the investigators obtained the second warrant because they wanted to obtain evidence. I'm reading this. Evidence of location monitoring, navigation, or registration on cell phone towers from his cell phone. Under the circumstances, how does your claim fit within the first prong with respect to attorney failure to comply with the requirements of the community? I mean, it's perfectly reasonable, is it not, for the attorney to recognize that this was acceptable? Your Honor, it's the second warrant, the November warrant, that excludes cell phones. That warrant makes it clear that cell phones are excluded from the October warrant. Even if that's true, the reality is we're still talking about electronic equipment and electronic data storage devices, which cell phones certainly would at least conceivably fall within that. And then you have the second warrant, so I just struggle with how Strickland's first prong is violated here. Your Honor, computers in the first warrant does not encompass cell phones. Under Riley, we know that cell phones are special under the Fourth Amendment. We fit them in our pockets, and they contain the sum of our private lives. We don't presume intrusions into the contents of a cell phone valid. The reasons to do so need to be clear and specific. In light of the specific limits present in the October search warrant and affidavit, it is difficult to embrace the government that cell phones are included within. Whereas computers are referred to 79 times in the October warrant and affidavit, there is no reference to cell phones. It doesn't say cell phones, but there are some other broader terms like all other electronic equipment or Internet access devices. So why do you think cell phones wouldn't fall under that? Your Honor, the standard for determining scope requires an objective assessment of the circumstances surrounding the issuance of the search warrant, the contents of the warrant, and the circumstances of the search. And here, that objective assessment supports the conclusion that the October warrant's scope does not include cell phones. They are not mentioned in the affidavit or the warrant, which are to be read together and which are limited to computers. The warrant's list of items to be seized includes only computers and electronic equipment used with a computer to use or create the physical letters described in the affidavit, such as printers and copy machines. And an affidavit can only narrow, not expand, a warrant. And here, Inspector Steele states in paragraph 23 of his affidavit his belief that these letters were created by a computer using a word processing program and an electronic printer and that the evidence would be recovered from storage devices associated with the computer. And in paragraph 29, even though forensic searches of cell phones and computers differ, Inspector Steele references only computers in his discussion of the necessity for an off-site forensic analysis of misfits' computers. What about the fact that the affidavit references the threatening communications made through Facebook and sort of common knowledge that people have Facebook on their phones? Your Honor, Facebook communications are never discussed in the affidavit as originating from a cell phone. In contrast to computers, there is no description as to why seizing a cell phone would likely produce evidence of those messages. The affidavit only provides a basis to look for evidence of letters, which appears to be produced on a computer with word processing capabilities. Counsel, I'm interested in your thoughts on the following. In your OPRA breadth analysis, there's a question of whether the investigators could have applied for a narrower search warrant. But at that point, when the first warrant was sought, the investigators didn't know what devices Smith had. So how could they have sought a narrower warrant at that point? Your Honor, they didn't know what devices they had. They knew that they were looking for a computer, and that's made obvious by the words of the affidavit. And in fact, it's the second warrant that makes clear that cell phones were not contemplated in the October warrant because that uses special limiting language to supplement the list of items, to expand the scope of items that were included in the October warrant. It's made clear by the second one. Counsel, at trial, Smith called a forensic expert who testified that someone other than Smith could have used the e-mail to access the printer. And then Smith's mother also testified, saying that other people had access to Smith's password for her phone and could have used the printer. Isn't the implication that there's a password on the phone that triggered access to the printer? Your Honor, respectfully, the ends don't justify the means. Just because they were found on her iPhone does not answer the scope of the warrant where cell phones were not mentioned. It's the language of the warrant that controls, and the language of the warrant in the affidavit does not include cell phones. And moving on. So basically, you're hanging your whole case based on Riley. Is that correct? No, Your Honor. I'm hanging part of my case on Riley. It's Riley that should make us extra cautious about the search of the cell phone. So that is part of my argument. And the other part of my argument is that the search warrant and the affidavit read together specifically narrow the scope of the search to computers associated with word processing programs that were meant. They don't contemplate. The warrant and the affidavit don't contemplate cell phones. I guess what I struggle with is, you know, if we were in a law school class and we were talking about the proper way to prepare affidavits for warrants and the like, there would be a lot we could talk about along what you're saying. But your claim is that counsel was just obviously incompetent because he didn't grab hold of this prong. And I'm still struggling with how you meet the first prong of Strickland. This may have not been a perfect warrant. I get that. But it did talk about electronic equipment, you know, printers and the like. It specifically covers scanners, digital cameras, and Internet access devices. And as my colleague pointed out, certainly cell phones are Internet access devices. On my phone, I can actually work my printer from my iPhone. So I just – it's not one of those things you say, oh, well, I just missed it. It's a question of defining what these terms mean, and I'm struggling with how you satisfy the first prong of Strickland in doing so. Yes, Your Honor. I'd like to answer your question, but I'm moving into my rebuttal time. Why don't you go ahead and answer, and we'll make sure you have two minutes when you return. Thank you so much, Your Honor. Your Honor, Strickland's first prong, I respectfully disagree. Under an objectively reasonable representation, every competent criminal attorney going to trial would have filed a motion to dismiss in this instance. Looking at this case from the perspective of a lawyer that's going to defend their client in a case who knows it's going to a trial, they would have filed the motion, this motion to suppress, where the evidence derived from this iPhone formed the crux of the case, as argued by the government in closing, and where the search warrant and the affidavit did not mention cell phones. And I'd like to reserve the balance of my time. Yeah, we'll put two minutes on the clock when you come back.  Thank you. May it please the Court, Daniel Zip on behalf of the United States. Your Honor, the defense attorney in this case did not perform, performance did not fall below the range of reasonable professional assistance. As the district court properly found, there was ample PC for seizure of the phones in this case, the warrant was sufficiently particular, and the language was broad enough to encompass seizure of the cell phones. Specifically, if you look at attachment B, it authorized the seizure of computers, peripherals, and all other electronic equipment used in connection with creating or transmitting threats or threatening communications. And then at the bottom of the attachment, it defined communications to include things like voicemails and text messages, which you would expect to find on a phone. I mean, the oddity, of course, we can look at language in here and say, well, that would encompass a phone. The oddity is that the phone just wasn't mentioned when it seems like a fairly obvious thing one would want to have access to. I mean, that's kind of a strange piece of this case. It certainly would have been better to list phones specifically there, but the language that the agents used was sufficiently broad to encompass smartphones, which as the district court held, are sort of like mini computers. It's true. It's just that normally we don't say, pass me your mini computer and I'll take a selfie of us. You know, it's just not the way we speak. And so you could say it covers it, but it's a little unnatural. Understood, Your Honor, but I still think for purposes of suppression, it fits within the language of the warrant. Counsel, doesn't the fact that the agents sought a second warrant specifically for a cell phone indicate that they had some concern about the scope of the first one? Not necessarily, Your Honor. I think, first, the subjective intent of the agents doesn't matter in this analysis. But even if it did, as the district court found, the facts of this case were such that they got the first warrant. Before they executed that, then Ms. Smith traveled to Reno and committed this assault on one of the victims. And in the affidavit of the second warrant, they made clear that it was based on this new conduct and that they were seeking GPS information on the phone. So one interpretation is not that they sort of realized that they had seized things that they weren't supposed to, but just before sort of the facts changed in the time period between the first warrant and the second, such that they wanted to make sure that the new warrant covered the type of GPS evidence relevant to that new assault. I mean, there's a, you know, I think your opposing counsel is kind of making the argument, well, there's a strong flavor of the affidavit that's talking about the use of like an actual computer, right? The defendant used a computer to study for exams, for example, and so therefore was likely to have used a computer to send threatening messages. And I guess the nature of the messages were such that they appeared, you know, some of them printed. And so I think what she's saying is, you know, when you take a look at this as a whole, it's more naturally referring to what we think of traditionally as computers, like a desktop computer or laptop. Two responses to that. One, even if that's true, there was sufficient probable cause, in that at the beginning of the affidavit they described two Facebook threats made to Ms. Raddick, followed by a sort of hard copy threat mailed to her house, followed by a third Facebook threat that was the most serious of the three. That sort of combination there is enough to find probable cause for a search of a phone, regardless of what the overall tone may have been geared towards computers. And then secondly, as the Supreme Court has made clear, that when analyzing the language in affidavits like this, these are drafted by non-lawyers in the midst of haste of criminal investigation, and the resolution of doubtful or marginal cases should be determined with a preference for the warrant. So even if one interpretation is that sort of the tone was geared towards computers, viewing it in that context, in light of the Facebook analysis, there's enough here to provide probable cause. Counsel, let me ask you this. I did not ask your opposing counsel yet about this, but are you aware of any case, published case, where an attorney has been found guilty of ineffective assistance of counsel for doing or not doing what happened in this case? No, Your Honor, I'm not aware of any cases along those lines. Sort of one other factor I think that would go into analysis, whether this was ineffective, is even if this court were to find that there wasn't probable cause for the seizure of the phones, there would still be a good faith exception that would apply here, and that the agents, at the very least, the warrant wasn't facially invalid, that any agent picking it up would automatically know that there was something wrong with it. So the fact, even if there wasn't probable cause, the agents still used the warrant to conduct the search, and this is not the type of situation that the exclusionary rule should apply. And then finally, sort of stepping back, we're not really on direct review of a suppression motion. This is ultimately about whether putting yourself in the shoes of defense counsel at the time of preparing for trial, whether this is the type of motion that would be so obvious that it would fall below the range of reasonable professional assistance not to make the motion. Here, clearly the defense put on a strong defense. They pursued other pretrial motions, including most notably a successful motion to exclude the gun and exclude any evidence of the threats made in Reno, along with motions for true threats dismissal and an overall sort of David and Goliath type defense that this was a woman whose mother was unjustly fired and who was fighting against defense attorneys from a powerful firm. Defense counsel clearly had a strategy here and made the best of what she could with the facts that she did. The fact that this one motion, with a very low likelihood of success at best, was not the strategy she chose, was not the type of error that was so serious that she was essentially not functioning as the lawyer guaranteed by the Sixth Amendment. If you didn't have the evidence from the cell phone, what else would you have had here to move forward with the case? There was strong circumstantial evidence with or without the phones that Ms. Smith was the person making these threats. You had initially the Facebook threats mentioning her mother, followed by the hard copy threats to the first victim, additional hard copy threats made to multiple lawyers involved in the litigation. Then Ms. Smith was also filing similarly worded filings in the lawsuit. She threatened one of the attorneys outside of the courtroom and then followed up with additional hard copy letters, all of which matched each other and had similar language. There's a strong circumstantial case with or without what was found on her phone that she was the one responsible for the threats, which again is another reason why when defense counsel is evaluating what their best strategy for the defense here is, focusing their limited credibility with the court and their limited resources on a motion to suppress just the phone is not outside the realm of reasonable representation. I'm happy to answer any other questions. We'd ask that you affirm the district court. Okay, thank you. I just have a few points to make on rebuttal, Your Honors. First of all, Inspector Steele did not contemplate cell phones when he drafted the October affidavit and warrant, and this court should not fill cell phones in using the government's post hoc rationalizations as how to fit a proverbial square peg into a round hole. Counsel, may I ask you, since you don't have a lot of time, I ask your opposing counsel whether he was aware of any case, published case, that deals with the facts of this case or substantially similar ones where IAC was found. Can you give us any such case? I can, Your Honor. There aren't many cases on point, but there's one case out of the district court case, and it has almost identical facts to the facts of this case. And which district court is this, please? It's in Kansas, and the case is called Ramirez. And the site is number CR-12-10089, District of Kansas, and it's actually decided before Riley. In that case, there were two warrants. One said the first one did not say cell phones, and the second one did. And the district court concluded that as a matter of law, the first warrant did not authorize the officer to search the contents of the cell phone because there was no record to explain why the first affidavit and warrant did not mention cell phones. I take your point. Obviously, we're not bound by that court. But it sounded like the court was ruling on a motion as opposed to an IAC claim. And what I'm looking for, is there a case where the first prong of Strickland was satisfied, according to a court of record, similar to the situation here? Your Honor, there is no case exactly on point. This is where I would point to other Ninth Circuit cases addressing scopes such as sodomity and look at that in conjunction with Riley to arrive at the fact that no reasonable attorney would have failed to file this motion to suppress. And my very quick last point is, in response to opposing counsel, a warrant should leave nothing to the discretion of the executing officers. That's part of the protective purpose of the Fourth Amendment. And that's what matters. Oh, I have a bit of time. And I'd like to address the good faith argument that brought up by opposing counsel. You're into sort of borrowed time now, but why don't you go ahead and address that and then wrap up. Okay, sure. I'll just say one point about good faith. Good faith is about the officer's objectively reasonable reliance on an invalid warrant, but in this case, an objectively reasonable reading of the October warrant does not include cell phones. And I will conclude my argument with that. Thank you so much. Thank you. And we thank both counsel for the briefing and argument. This case is submitted.
judges: SMITH, BRESS, Morris